*Decision will be entered under Rule 50.*

KEYSTONE WOOD PRODUCTS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31420. Promulgated May 26, 1930.

*John E. Hughes, Esq.*, and *William Cogger, Esq.*, for the petitioner.

*James L. Backstrom, Esq.*, and *P. A. Sebastian, Esq.*, for the respondent.

## OPINION.

STERNHAGEN: The first question for decision is whether as a matter of law and by virtue of the facts in evidence the petitioner is entitled to include in its statutory invested capital as defined in sections 325 and 326, Revenue Act of 1918, any amount as the value of its rights as assignee of the contract of June 21, 1912. Two witnesses testified for petitioner that in their opinion the contract was at the time of assignment and on March 1, 1913, worth $800,000, and another testified to his opinion of a value of $1,300,000. There are, however, facts in evidence which we think seriously impair the weight of these opinions.

The contract was made in June, 1912, by parties who on both sides were acting with full knowledge of the then known facts and were both apparently intelligently aware of the possibilities. After six months of negotiation they agreed upon terms as to price and other obligations, both having in contemplation the organization of petitioner, the construction of a plant, the precise use and purpose of the wood supply and the risks and hopes of the enterprise. Nothing occurred prior to March 1, 1913, which was not contemplated on June 21, 1912, to change the relative advantages of the parties under the contract or to justify the belief that the net rights of the Lackawanna Co. could be sold to a willing and intelligent buyer for a

premium. If it could have been so sold or were fairly worth a substantial premium above the assumption of its contractual obligations, it may be questioned why the Lackawanna Co., acting for its stockholders, some of whom had no interest in the Keystone Co., assigned the contract without realizing upon this asserted increment in the value of its rights.

The valuation asserted by the petitioner's witnesses is arrived at by attributing to the contract an assumed assurance of future profit of $3 or $4 to be derived from the manufacture and sale of each cord of wood supplied out of an assumed source of supply of 400,000 cords. It does not require expert intelligence or special experience in the manufacture of wood chemicals to perceive the fallacy of such valuation, even accepting it as fact that such assumed profits could be quite definitely foreseen. By such reasoning, the allocation of profits is confined to give value solely to the contract providing for the supply of one class of raw material. No part of the profit is allocated to plant or other investment, to say nothing of other supplies or expenditures. Thus a steel business might attribute its profits as it chose to give value to contracts for ore, coke or limestone, or a motor manufacturer to any one of the numerous supply contracts it might have. This would be clearly unsound. Granted that the reasonably certain prospect of future earnings might in a proper case be translated into a present worth, and assuming that such worth may be treated as a present asset, like, say, good will or going-concern value, there is no authority in precedent and we think none in reason for carrying the process beyond its effect on the business as a whole and into an allocated valuation of each contract or other factor used in producing the expected estimated gains. *Coca-Cola Bottling Works of Pittsburgh*, 19 B. T. A. 267.

The opinion of the court in *Boggs & Buhl, Inc.* v. *Commissioner*, 34 Fed. (2d) 859, does not compel a recognition of such a valuation merely because it is offered and because no countervailing witnesses have been brought forth to testify to the manifest unsoundness of its method. Opinions are at best a weak form of evidence, although in some esoteric matters they may constitute the only method of proof. Their weight can not be the equal of fact, and, unlike factual evidence, they involve the play of reason and can not be blindly adopted as truth. Valuation is notably a matter of opinion and the force of the opinion is derived from the care and ability used in forming it. Historical experience alone lends no necessary authority to an opinion; but only when coupled with mental ability to give it significance, and in matters of valuation, to appreciate the nature of the problem. Thus opinions as to value are in each instance not arbitrarily to be either rejected or accepted entirely, but are reasonably to be weighed with all the other evidence in accordance with the demonstrated quali-

fications of each witness to form an opinion. *Head* v. *Hargrave*, 105 U. S. 45; *The Conqueror*, 166 U. S. 133; *W. S. Bogle & Co.*, 26 Fed. (2d) 771; *Gessell* v. *Commissioner*, 41 Fed. (2d) 20.

Nor can we accept the factors used in arriving at this valuation. To say that in 1912 and 1913 the profit would be at least $3 a cord was a speculation not supported by the then existing facts, for this plant had had no past experience and for the immediate future the profit per cord in 1913 was $1.65 and in 1914, 58 cents. Furthermore, the contract itself discloses a serious apprehension of a substantial risk, and it must be assumed that this was a factor embodied in its terms.

We are of opinion that the evidence taken altogether does not justify a finding that the petitioner's contract rights were when acquired in September, 1912, of a value above the obligations which petitioner assumed. Hence, there is nothing, as a matter of fact, which has been omitted from invested capital. Since the evidence shows and the petitioner agrees that the value on March 1, 1913, was no greater than when acquired in September, 1912, it follows that there is no value on the later date to be used as a basis for a depreciation deduction in 1918 and 1920.

Furthermore, there appears to be no support as a matter of law for including the contract rights in invested capital, even if they be treated as tangible property under the statute. They were not, and it is not contended that they were, paid in for stock or shares. The shares were issued at par for $250,000 cash paid in by the Quinn and Barclay families. The contract was at that time between the Norwich Co. and the Lackawanna Co., whose shares were owned by the Quinns and the Shermans and not at all by the Barclays. The separate identity of the petitioner from that of the Lackawanna Co. was expressly provided for and can not be ignored. Indeed, if it were to be ignored and the two treated as the same, all semblance of claim to include the contract in invested capital would disappear; because it is only by positing the transfer from one to the other after a value has sprung up that invested capital can be claimed to be affected. The mere existence of a bilateral contract upon promises would not ordinarily affect invested capital. It is therefore claimed that the value of the contract rights above the burden of its obligations would be a paid-in surplus and therefore within statutory invested capital under section 326 (a) (3). But the contract was not an asset paid in by stockholders over and above the par value of their stock. The petitioner became a party to it by a valid assignment from another corporation which was not a stockholder, thus acquiring both the rights and obligations of the assignor. This is not paid-in surplus in the ordinary sense and we see no reason to suppose that it was

within the term as used in the statute. *A. C. F. Gasoline Co.*, 6 B. T. A. 1337. It is unlikely that Congress intended an evaluation of the rights and obligations of each taxpayer under its contracts so acquired, in order to determine surplus. See *La Belle Iron Works* v. *United States*, 256 U. S. 377. The contract represented no investment either of the petitioner or its stockholders, and nothing which reasonably should be used in determining whether the ratio of its profits was greater or less than the standard prescribed by the statute to measure the profits tax. See *Kleeson* v. *Blair*, 28 Fed. (2d) 557.

In our opinion, therefore, the contract may not be included in invested capital and the respondent's determination excluding it is sustained.

The petitioner's next contention is that its 1917 taxes have been overstated in computing invested capital for 1918 and 1920. Although 1917 taxes are not directly in issue here, petitioner says that in order to determine invested capital for 1918 and 1920 it is necessary to determine the correct tax for 1917, and that such 1917 tax has not been correctly determined because in computing taxable net income for 1917 no deduction was allowed for exhaustion of the aforesaid wood supply contract of 1912 based upon its value on March 1, 1913. Whatever may be the merits of the theory generally that tax liabilities for years otherwise not before us for definitive determination are nevertheless in all respects open for consideration because of their effect upon invested capital in later years, the tax for which is under adjudication, we need not pass upon such theory here, because we have held that in fact the petitioner's contract rights had on March 1, 1913, no fair market value. Hence, as in 1918 and 1920, there was no basis for exhaustion thereof in 1917 and no necessary change in income or the resulting tax. Upon this point respondent's determination is sustained.

The petitioner's last claim is that the facts shown by the evidence, which are in substance stated in the foregoing findings, establish such an abnormal condition of capital or income as under section 327 (d) to entitle petitioner to special assessment under section 328, the amount of which is to be later determined under Rule 62. We are of opinion that the conditions are not within the special assessment sections. We can not say that the amount of the salaries paid, the prewar earnings, the exclusion of the contract from invested capital or its approaching end through complete performance, the relative amount of its income in the taxable years, or the method of accounting for the 1915 addition to its plant, taken separately or together, are abnormal conditions resulting in exceptional hardship. The respondent's denial of special assessment is sustained.

*Judgment will be entered under Rule 50.*